CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
JUN 17 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CRISTIN L. SPRENGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:07cv502 |
| ) | |
| THE RECTOR AND BOARD OF ) | |
| VISITORS OF VIRGINIA TECH, et al., ) By: | Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiff's motion to quash a subpoena and motion to disqualify counsel from representing Woodrow Wilson Rehabilitation Center ("WWRC"). The court heard argument in this matter on May 20, 2008.

### I.

The allegations of this case arise out of plaintiff Cristin L. Sprenger's ("Sprenger") employment at Virginia Polytechnic Institute and State University ("Virginia Tech"). Plaintiff has been employed at the Extension Program of Virginia Tech. Sprenger contends that Virginia Tech has not provided her with appropriate accommodations for her migraine headaches. As a consequence, Sprenger alleges violations of the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and civil rights violations under 42 U.S.C. § 1983.

The discovery issue before the court concerns a subpoena issued under Fed. R. Civ. P. 45 to WWRC to produce "all electronically stored information on all computers, laptops, PDA's, portable media or other devices" utilized by Kurt W. Sprenger, plaintiff's husband, which relate to the plaintiff's claims. In particular, defendants seek to obtain e-mail communications between

Mr. and Mrs. Sprenger concerning the lawsuit. Defendants have offered to reimburse the agency for any and all costs related to the retrieval of the e-mails they seek. Plaintiff moves to quash the subpoena on the grounds that it is overbroad and burdensome[1] and that the records are protected by spousal privilege.

Defendants argue that the records are not protected under the spousal privilege, pursuant to the Department of Human Resource Management Policies and Procedures' Use of Internet and Electronic Communication Systems ("Policy"), which is applicable to all state employees.[2] The Policy states that "no user should have any expectation of privacy in any message, file, image, or data created, sent, retrieved, or received by use of the Commonwealth's equipment and/or access" and that state agencies have the right to monitor e-mail sent or received by agency users. Dkt. Ent. 58, Ex. 1. This monitoring can occur "at any time, without notice, and without the user's permission." Id. The Policy does allow the work computers to be utilized for personal use. Id. Defendants assert that this policy obviates any spousal privilege asserted by Sprenger and/or her husband, as they were both state employees at all times relevant to the subpoena.

## II.

In a civil case based on a federal cause of action, questions of privilege are governed by federal common law as interpreted by the court "in light of reason and experience." Hawkins v.

---

[1] Plaintiff asserted that production of these electronic communications would be burdensome to WWRC and requested additional time to allow WWRC to weigh in on the matter. At the hearing, the parties were given an additional ten days to provide evidence of the burden of producing the e-mail evidence. No additional evidence was filed, and WWRC has not taken any position with the court regarding the burden posed by this subpoena. Thus, the burdensome objection does not appear to be well taken.

[2] It is not disputed that both Mr. and Mrs. Sprenger are state employees.

2

Stables, 148 F.3d 379, 382 (4th Cir. 1998) (quoting Fed. R. Evid. 501). Plaintiff's claims arise under the ADA, the FMLA, and 42 U.S.C. § 1983. Therefore, this is a civil case based on a federal cause of action and claims of spousal privilege should be evaluated under federal common law.

Under federal common law, two types of spousal privilege exist: the confidential marital communications privilege, which protects confidential communications between spouses, and the adverse spousal testimony privilege, which protects spouses from being required to adversely testify against their spouse. See Trammel v. United States, 445 U.S. 40, 51 (1980). Federal courts have held that only the marital communications privilege applies in civil proceedings. See Secs. & Exch. Comm'n v. Lavin, 111 F.3d 921 (D.C. Cir. 1997) (upholding objection to subpoena in a civil case brought on federal claims on basis of confidential marital communications privilege); Ryan v. Comm'r of Internal Revenue, 568 F.2d 531, 544 (7th Cir. 1977) (holding that the rationale underlying the adverse spousal testimony privilege is not applicable in the civil context); see also 3-505 Weinstein's Federal Evidence § 505.09.

In Wolfle v. United States, 291 U.S. 7 (1934), the Supreme Court recognized the privilege in confidential marital communications and noted that the basis of the privilege, the protection of confidential marital communications, was "so essential to the preservation of the marriage relationship as to outweigh the disadvantages of the administration of justice which the privilege entails." Id. at 14. The Court also noted that marital communications are presumed to be confidential, but if the nature and circumstances surrounding the communication show that it was not intended to be confidential, then the communication is not privileged. Id. Specifically, communications which are made in the presence of a third party are not confidential and thus, are

3

not privileged. Id.

Likewise, the Fourth Circuit has recognized that "[i]nformation that is privately disclosed between husband and wife in the confidence of the marital relationship is privileged." United States v. Parker, 834 F.2d 408, 411 (4th Cir. 1987) (citing Blau v. United States, 340 U.S. 332, 333 (1951); see also United States v. Acker, 42 F.3d 509, 514 (4th Cir. 1995); United States v. Warren, No. Civ.A. 7:04CR00021, 2005 WL 2806071 (W.D.Va. Oct. 25, 2005).

Whether e-mails that are sent to or from a work e-mail account using a work computer are privileged is an issue of first impression in the Fourth Circuit. The Southern District of New York has addressed the matter in United States v. Etkin, and held that, in light of the employer's computer use policy, defendant could not claim the marital communications privilege. No. 07-CR-913, 2008 WL 482281 (S.D.N.Y. Feb. 20, 2008). Defendant, an employee of the New York State Police ("NYSP") moved to preclude introduction of an e-mail at trial which was sent using his government-issued e-mail account, asserting the marital communication privilege. Id. at *1. In Etkin, the defendant was notified of the NYSP's computer policy every time he logged in to his computer. Id. at *3. The log-in screen notified the defendant that by logging in, he accepted the terms of the notification, which provided for the monitoring of the computers and further notified users that they had no legitimate expectation of privacy in any use of the computers. Id. The court was particularly persuaded by the flash-screen warning in holding that any expectation that his e-mail to his wife would remain confidential was "entirely unreasonable" and therefore, the communication was not confidential. Id. at *5.

The court in Etkin also relied on decisions by Seventh and Ninth Circuits which held that marital communications taking place while one of the spouses was incarcerated are not privileged

4

because the spouses knew that prison officials could monitor their communications. See United States v. Griffin, 440 F.3d 1138 (9th Cir. 2006); United States v. Madoch, 149 F.3d 596 (7th Cir. 1998). The underlying message in these cases was that "there can be no confidential communication where spouses are on actual or constructive notice that their communications may be overheard, read, or otherwise monitored by third parties." Etkin, 2008 WL 482281 at *3 n.5.

The attorney-client privilege is similar to the marital communications privilege in that its basis lies in encouraging "full and frank communication between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Courts have analyzed the confidentiality of e-mails and documents sent from work computers in applying the attorney-client privilege. Two federal courts have examined this issue. See Curto v. Med. World Commc'ns, Inc., 2006 WL 1318387 (E.D.N.Y. 2006) (holding the privilege was not destroyed by e-mails sent from a work computer when employee worked at home and employer had no means to monitor activity on the computer); In Re Asia Global Crossing, Ltd., 322 B.R. 247 (Bankr.S.D.N.Y. 2005). In Asia Global, the court laid out four factors to consider to measure the employee's expectation of privacy in his computer use

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies.

Asia Global, 322 B.R. at 257. In that case, Asia Global did not appear to have a formal policy regarding use of computers and e-mail. Id. at 260. On that basis, the court ruled that the use of the work e-mail to communicate with a personal attorney did not destroy the attorney-client privilege. Id. at 261.

5

Asia Global and Etkin both looked toward the Fourth Amendment reasonable expectation of privacy standard to determine the reasonableness of intent that the communication remain confidential. Recognizing that the "question of privilege comes down to whether the intent to communicate in confidence was objectively reasonable," the court in Asia Global expressly equated the question to whether there was an objectively reasonable expectation of privacy. Asia Global, 322 B.R. at 258.

Many federal cases involving Fourth Amendment reasonable expectation of privacy and computers take place in the environment of the workplace. In O'Connor v. Ortega, 480 U.S. 709 (1987), the Supreme Court held that public employees did have Fourth Amendment rights in their offices, but that their reasonable expectations of privacy could be "reduced by virtue of actual office practices and procedures, or by legitimate regulation." Id. at 717. Because of the many different types of public work environments, the Court noted that questions of public employees' reasonable expectation of privacy should be addressed on a case-by-case basis. Id. at 718.

The Fourth Circuit has held that a public employee has no reasonable expectation of privacy in his internet use in light of the employer's computer use policy. United States v. Simons, 206 F.3d 392, 398 (4th Cir. 2000). The defendant in Simons worked for the Federal Bureau of Information Services ("FBIS"), a division of the Central Intelligence Agency. Id. at 395. FBIS had a policy which "clearly stated that the FBIS would 'audit, inspect, and/or monitor' employees' use of the Internet, including all file transfers, all websites visited and all e-mail messages." Id. at 398. The policy further restricted use strictly to official government business. Id. at 395. Even if the defendant had a subjective expectation of privacy, this expectation was not objectively reasonable considering FBIS' policies. Id. It is unclear whether the FBIS policy was

6

presented in the same flash-screen warnings as the court in Etkin found so convincing, but the court in Simons does note that the defendant did not contend that "he was unaware of, or that he had not consented to, the Internet policy." Id. at 399 n.8.

In two very similar cases to Etkin involving computers with flash-screen warnings and Fourth Amendment rights, courts held that defendants had no reasonable expectation of privacy in their work computers. See United States v. Angevine, 281 F.3d 1130 (10th Cir. 2002) (upholding a seizure of a state-owned computer because defendant had no reasonable expectation of privacy in the computer in light of flash-screen warning); United States v. Bailey, 272 F.Supp.2d 822 (D.Neb. 2003) (holding that defendant had no reasonable expectation of privacy in his work computer because he consented to a flash-screen warning every time he used the computer). The Seventh Circuit has also held that an employee had no reasonable expectation of privacy after the employer had announced that it could inspect laptops which were lent to employees. Muick v. Glenayre Elecs., 280 F.3d 741 (7th Cir. 2002).

The Second and Fifth Circuits have held on particular facts that employees did have a reasonable expectation of privacy in their office computers. See Leventhal v. Knapek, 266 F.3d 64, 73 (2nd Cir. 2001) (employer only had an anti-theft policy prohibiting use of computers for personal business and computers were subjected to "infrequent and selective search[es] for maintenance purposes"); United States v. Slanina, 283 F.3d 670, 676 (5th Cir. 2002) (employer did not have a policy notifying employees that computers were monitored). The Court of Appeals for the Armed Forces has also held that an employee had a reasonable expectation of privacy in her work computer even though there was a flash screen warning at log-in. United States v. Long, 64 M.J. 57, 64 (C.A.A.F. 2006). The court distinguished Simons on the basis that the policy in

7

Simons was "very specific," restricted use to official business, and notified the user that the system was subject to inspection. Id. at 65. The log-on banner in Long also omitted the notification that users had no expectation of privacy in use of the system. Id. All these factors added up to a qualification of defendant's privacy expectation in her e-mails, but not an elimination of an objectively reasonable expectation of privacy. Id.

### III.

These cases turn on the very specific factual situations unique to each case. In this case, the factual record is sparse, consisting only of the Policy submitted at the hearing. Under the factors laid out in Asia Global, the court only has facts to meet one of the factors, that personal use of the work computer is allowed. While the Policy was tendered to the court, no affidavit or other evidence was offered as to knowledge, implementation, or enforcement of the Policy. There is no showing that Mr. or Mrs. Sprenger were notified of the Policy by a log-on banner, flash screen, or employee handbook and whether Mr. or Mrs. Sprenger were ever actually aware of the Policy. It is unclear whether third parties had a right of access to the e-mails. The record also does not show whether the Policy was regularly enforced and whether the state employees' computer use was actually monitored. Given the nature of the martial communications involved, the burden is on the defendants to demonstrate that the privilege has been waived. See Blau v. United States, 340 U.S. 333-34 (1951) (holding that defendant had not overcome the presumption that marital communications are privileged). Based on the exceedingly thin record that exists at this time, defendants have not met this burden. Accordingly, the motion to quash the WWRC subpoena is hereby **GRANTED**. If defendants wish to pursue this matter further, they shall contact the Clerk of the Court to set up an evidentiary hearing on the issue of waiver.

Plaintiff's motion to disqualify the Office of the Attorney General of the Commonwealth of Virginia as counsel for WWRC is **DENIED** as WWRC has not filed any motion to quash the subpoena or otherwise made an appearance in this matter raising the specter of a conflict. Further, plaintiff has not shown that the subpoena is burdensome in any respect.

The Clerk of the Court is hereby directed to send copies of this order to all counsel of record.

Enter this 17th day of June, 2008.

Michael F. Urbanski
United States Magistrate Judge